CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED

May 13, 2026

LAURA A. AUSTIN, CLERK
BY: **/s/ M.  Poff**
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **CHRISTIAN THOMAS NEALSON,** | ) | |
| Plaintiff, | ) | **Case No. 7:23-cv-00442** |
| | ) | |
| **v.** | ) | |
| | ) | **By: Michael F. Urbanski** |
| **ROBERT KEENE,** | ) | **Senior United States District Judge** |
| Defendant. | ) | |

## MEMORANDUM OPINION

Christian Thomas Nealson, a state inmate proceeding <u>pro se</u>, filed this civil action under 42 U.S.C. § 1983. Nealson claims that the remaining defendant, Robert Keene, acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment. Keene has moved for summary judgment on the ground that Nealson failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). For the reasons set forth below, Keene's motion for summary judgment, ECF No. 102, is **GRANTED**.

### I.    Background

**A.    Summary of the Allegations against Keene**

The events giving rise to this action occurred at Keen Mountain Correctional Center (KMCC), where Nealson was previously incarcerated. According to Nealson's pleadings, he experienced a medical emergency in his cell on February 23, 2023, after being exposed to fentanyl. He claims that Keene, the control booth officer on the day of the incident, failed to

respond to the calls for help made by his cellmate and other inmates, resulting in delayed treatment.

**B.      Evidence Relevant to Exhaustion**

**1.      The Applicable Inmate Grievance Procedure**

The Virginia Department of Corrections (VDOC) has established a grievance procedure for inmates that is set forth in VDOC Operating Procedure (OP) 866.1. Breeding Decl., ECF No. 103-1, ¶ 4. Grievable issues include actions of staff that affect an inmate personally. OP 866.1 § III(B)(1) (eff. Jan. 1, 2021, amended Aug. 1, 2022), Breeding Decl. Encl. A, ECF No. 103-1.

Pursuant to OP 866.1, inmates must first attempt to resolve an issue informally before filing a regular grievance. If a verbal complaint is not resolved to the inmate's satisfaction, the inmate may submit an informal written complaint. Id. § I(D)(2). The written complaint "must be received by designated staff within 15 days of the original incident or discovery of the incident," and the designated staff member then has 15 days to provide a response. Id. If "staff fail to provide a written response within 15 days" or if the inmate is dissatisfied with the response, the inmate may file a regular grievance. Id. § I(D)(4).

Regular grievances must be submitted within 30 days from the date of the incident or the discovery of the incident, absent injury, sickness, or some other circumstance beyond an inmate's control. Id. § III(B)(5). A regular grievance "should contain a single grievable issue" and the grieved issue must be "identical to and limited to the issue" raised in the written complaint. Id. § III(B)(1). When filing a regular grievance, an inmate must submit the written complaint or other documentation showing that the inmate utilized the written complaint

2

process. Id. § III(B)(6); see also ECF No. 110-1 at 1 ("Instructions for Filing: . . . You must attach the *Written Complaint* or other documentation used to satisfy the informal complaint process.").

Following the submission of a regular grievance, the institutional ombudsman has two days to accept or reject it. Id. § I(D)(5). A timely regular grievance may be accepted even if the related written complaint was not filed within the applicable 15-day period. See id. § III(C)(3) ("*Regular Grievances* which include *Written Complaints* filed after the 15 days should be accepted for intake as long as the *Regular Grievance* is submitted within 30 days of the event or discovery."). If a regular grievance satisfies the intake criteria, staff must accept the grievance, log it into VACORIS, and issue a grievance receipt within two working days. Id. § III(C)(4). If the grievance does not meet the intake criteria, staff have two working days to return the grievance to the inmate with an explanation for its rejection. Id. § III(C)(5).

When a regular grievance is accepted during the intake process, the "Facility Unit Head" or "Assistant Facility Unit Head" is responsible for providing a Level I response within 30 days of the issuance of the grievance receipt. Id. § III(F)(1)–(2). If an inmate does not receive a timely response to a regular grievance, the inmate may "appeal to the Regional Ombudsman in writing, including copies of the grievance receipt and other supporting documentation." Id. § III(F)(2)(a)(b). Additionally, "[p]rior to appealing to the Regional Ombudsman, the inmate may contact the Institutional Ombudsman to ascertain the status of the grievance response and await disposition." Id.

If an inmate is dissatisfied with the response, the inmate may submit a grievance appeal within five days of receiving the Level I response. Id. § IV(B)(1)–(2). An inmate may

also file an appeal if any time limit expires after a grievance has been submitted. See id. § (IV)(B)(3) ("Expiration of a time limit (including authorized continuances) while the grievance is in staff possession qualifies the grievance for an appeal."). An inmate must exhaust all of the requirements of the grievance procedure before seeking judicial relief. Id. § V(A). The exhaustion requirement is met when a regular grievance "has been accepted into the grievance process and appealed, without satisfactory resolution of the issue." Id. § III(V)(B).

**B.      Nealson's Exhaustion Efforts**

In support of the pending motion for summary judgment, Keene submitted a declaration executed by K. Breeding, the acting grievance coordinator at KMCC, along with Nealson's inmate grievance report. The report indicates that the grievance department received five written complaints from Nealson between March 2, 2023, and March 10, 2023. Breeding Decl. Encl. C, ECF No. 103-1. In a written complaint documented as being received on March 8, 2023, Nealson alleged that staff failed to promptly respond to a medical emergency he experienced in his cell on February 23, 2023, after being exposed to unidentified substances. Breeding Decl. ¶ 17; see also Breeding Decl. Encl. D, ECF No. 103-1. The written complaint was logged by the grievance department as KMCC-23-INF-00422, but grievance records indicate that "no response was given to this informal complaint." Breeding Decl. ¶ 17. Although the grievance procedure permits inmates to file a regular grievance "if 15 days have passed without [a] staff response to their [written] complaint," OP 866.1 § III(A)(1), the grievance department has no record of Nealson attempting to file a regular grievance regarding the issues outlined in the written complaint. Breeding Decl. ¶ 18.

In his unsworn response in opposition to the motion for summary judgment, Nealson argues that the prison staff's admitted failure to respond to the written complaint prevented him from filing a regular grievance with attached documentation showing that he had utilized the written complaint process. ECF No. 110 at 6–9. Nonetheless, Nealson asserts that he "did in fact file a regular grievance despite the fact that he did not have the complaint to attach to the grievance per policy" and that "the regular grievance was never processed." Id. at 6–7.

After receiving Keene's reply brief in support of the motion for summary judgment, Nealson filed an unsworn "response in further opposition" to the motion. ECF No. 117. The supplemental response states as follows:

> The plaintiff argues that he was in the hole on Feb. 24, 2023. Per DOC Policy OP 866.1 he was required to submit a written complaint within 15 days of the incident. The plaintiff spent 18 days in RHU where he did not have access to the grievance procedure as the grievance procedure required the plaintiff to submit the complaint to the grievance mailbox outside the chow hall. The plaintiff being in RHU for 18 days is proof that he did not have access to the mailbox that was required per policy. After the plaintiff left RHU on March 14, 2023 he was placed in A-407. That day the plaintiff was released from RHU the prison was on institutional lockdown. The plaintiff submitted the complaint to Lt Steven Coleman when he conducted a round in the pod. This was done on Lt Coleman's body camera and Lt Coleman made the point to emphasize that his body camera was on. The plaintiff did not receive a receipt for this complaint and had no way of knowing that it was filed. In fact until it was provided in the defendant's filing the plaintiff was under the impression it was not filed as he did not get a receipt nor an answer to it so he had no way to know that it was filed. [D]espite not hearing anything or receiving a receipt the plaintiff wrote and filed a regular grievance on the issue on about March 28th 2023. This grievance was never responded to and the plaintiff did not receive a receipt for this either.

ECF No. 117 at 2–8.

In addition to his unsworn submissions, Nealson submitted two verified pleadings that include a section addressing the exhaustion requirement.[1] Nealson's verified original complaint indicates that he filed written complaints on "3/7/23, 3/8/23, 3/9/23 and another on 3/15/23," which was recorded on Lt. Coleman's body camera. Compl., ECF No. 1, at 2. The complaint also states that Nealson filed a "grievance [on] 3/29/23" for which he did not receive a response. Id. His verified amended complaint, on the other hand, states that he filed "complaints and grievances . . . in a sealed envelope on March 15th [or] about to Lt Coleman," which were "never processed." Am. Compl., ECF No. 38, at 2 (emphasis added).

There is no evidence that Nealson contacted the grievance department about the status of the regular grievance that he allegedly submitted on either March 15, 28, or 29, 2023. Nor is there any evidence that Nealson appealed to the Regional Ombudsman after the deadline for receiving a grievance receipt or response expired.

## II.    Standard of Review

Keene has moved for summary judgment on the basis that Nealson failed to fully exhaust his administrative remedies prior to filing suit. Under Rule 56 of the Federal Rules of Civil Procedure, the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When ruling on a motion for summary judgment, the

---

[1] A verified complaint is the equivalent of an affidavit for purposes of summary judgment. Goodman v. Diggs, 986 F.3d 493, 498–99 (4th Cir. 2021).

6

court must view the evidence in the light most favorable to the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). To survive summary judgment, there must be sufficient evidence from which a reasonable finder of fact could return a verdict in the nonmoving party's favor. Id. at 252. "Conclusory or speculative allegations do not suffice to oppose a properly supported motion for summary judgment, nor does a mere scintilla of evidence." Matherly v. Andrews, 859 F.3d 264, 280 (4th Cir. 2017) (internal quotation marks omitted).

### III.   Discussion

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 211 (2007). The exhaustion requirement "serves two main purposes." Woodford v. Ngo, 548 U.S. 81, 89 (2006). First, it "protects administrative authority" by giving "an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court" and by discouraging "disregard of the agency's procedures." Id. (internal quotation marks omitted). Second, it "promotes efficiency" since claims "generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." Id.

Over the past 20 years, the Supreme Court has "strictly interpreted" the PLRA's exhaustion requirement. Williams v. Carvajal, 63 F.4th 279, 285 (4th Cir. 2023). The Court

has held that the provision "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes." Porter v. Nussle, 534 U.S. 516, 532 (2002). The Court has also held that "proper exhaustion" is required, which means that "a prisoner must complete the administrative review process in accordance with applicable procedural rules, including deadlines, as a precondition for bringing suit in federal court." Woodford, 548 U.S. at 88, 90. The applicable procedural rules "are defined not by the PLRA, but by the grievance process itself." Jones, 549 U.S. at 218. If "an administrative process is susceptible of multiple reasonable interpretations," the PLRA requires "that the inmate should err on the side of exhaustion." Ross v. Blake, 578 U.S. 632, 644 (2016).

The only exception to the PLRA's exhaustion requirement is "the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" Id. at 648. (2016). "Available" means "capable of use for the accomplishment of a purpose, and that which is accessible or may be obtained." Id. at 642 (internal quotation marks omitted). If an administrative remedy is not capable of use to obtain relief, "an inmate's duty to exhaust 'available' remedies does not come into play." Id. at 643. The Supreme Court has identified three circumstances in which an administrative grievance procedure is not "capable of use" in this sense: (1) where the procedure "operates as a simple dead end," with correctional officials "unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the procedure is "so opaque" that it is "practically . . . incapable of use" because "no ordinary prisoner can discern or navigate it"; and (3) where correctional officials "thwart inmates from taking advantage of a grievance procedure through machination, misrepresentation, or intimidation." Id. at 643–44; see also Moore v. Bennette, 517 F.3d 717,

8

725 (4th Cir. 2008) ("[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it.").

Because exhaustion is an affirmative defense under the PLRA, defendants bear the burden of establishing that an inmate failed to exhaust his administrative remedies. Jones, 549 U.S. at 216. Once defendants establish that a plaintiff failed to exhaust, "the onus falls on the plaintiff to show that remedies were unavailable to him." Tuckel v. Grover, 660 F.3d 1249, 1254 (10th Cir. 2011); see also Graham v. Gentry, 413 F. App'x 660, 663–64 (4th Cir. 2011) (concluding that summary judgment was appropriate where an inmate failed to fully comply with a jail's grievance procedure and failed to "adduce facts showing that he was prevented, through no fault of his own, from availing himself of that procedure").

## A.    Exhaustion

The court will first address whether the defendants have met their burden of establishing that Nealson failed to exhaust his administrative remedies. As previously explained, the Supreme Court has interpreted the PLRA to require "proper exhaustion" in accordance with "an agency's deadlines and other critical procedural rules," Woodford, 548 U.S. at 90.

Having reviewed the record, the court concludes that no genuine issue of material fact exists as to whether Nealson exhausted his claim against Keene. To satisfy the exhaustion requirement, an inmate in the custody of the VDOC must avail himself of every level of administrative review available under OP 866.1. See OP 866.1 § (V)(A)–(B). Here, there is no evidence indicating that Nealson utilized the grievance appeal process outlined in § IV of OP 866.1. As Keene notes in his reply brief, even assuming that Nealson filed a

9

regular grievance for which he did not receive a receipt or response, he was not without a remedy under the policy. Instead, the expiration of a time limit for a receipt or response while the grievance was in the possession of prison staff "qualifie[d] the grievance for an appeal." Id. § IV(B)(3). Because there is no evidence indicating that Nealson filed an appeal to the Regional Ombudsman as permitted by the procedure, the court concludes that no genuine issue of material fact exists as to whether Nealson fully exhausted his administrative remedies and that Keene has met his burden of proving that Nealson failed to do so. While Nealson may have believed that he was relieved from taking any further action after not receiving a response to his grievance, the Supreme Court has made clear that inmates must "err on the side of exhaustion" Ross, 578 U.S. at 644, and "use all steps that the agency holds out," Woodford, 548 U.S. at 90 (internal quotation marks omitted). Because Nealson did not do so, he failed to satisfy the exhaustion requirement. See Jackson v. Colley, No. 725-cv-00137, 2026 WL 446659, at *5 (W.D. Va. Feb. 17, 2026) (holding that an inmate did not fully exhaust his administrative remedies since the inmate failed to appeal after not receiving a response to his regular grievance).

**B.    Availability of Administrative Remedies**

Nealson alternatively suggests that administrative remedies were unavailable to him because he did not receive a response to his written complaint or the regular grievance that he allegedly filed next. However, "a grievance process is rendered 'unavailable' under the PLRA only if an inmate is actually prevented from using it." Moss v. Harwood, 19 F.4th 614, 623 (4th Cir. 2021). If "an inmate is able to participate in a grievance process,

notwithstanding alleged obstacles, then that process remains 'available' for purposes of the PLRA." Id.

Here, Nealson has not identified any obstacle that foreclosed further administrative review of his allegations against Keene. In his initial response to Keene's motion, Nealson argues that the prison staff's failure to respond to his written complaints and regular grievance prevented him from fully exhausting his administrative remedies. As previously noted, however, "OP 866.1 allows an inmate who does not receive a timely response at any level to appeal to the next level." Jackson, 2026 WL 446659, at *5. Thus, "the alleged failure to receive a timely response to an informal complaint or a grievance does not excuse an inmate from being required to proceed to the next level to properly exhaust his administrative remedies." Gomez v. Fields, No. 7:20-cv-00726, 2023 WL 2527161, at *5 (W.D. Va. Mar. 15, 2023), aff'd, No. 23-6305, 2023 WL 5666450 (4th Cir. Sept. 1, 2023); see also Wall v. Stevens, No. 7:16-cv-00373, 2019 WL 1371858, at *4 (W.D. Va. Mar. 26, 2019), aff'd, 775 F. App'x 761 (4th Cir. 2019) (emphasizing that the failure to respond to a grievance did "not excuse" a Virginia inmate's failure to exhaust since the inmate "could have pursued an appeal to Level II anyway" after "the time allotted under the procedure for a Level I response had passed"); Ferguson v. Clarke, No. 7:14-cv-00108, 2016 WL 398852, at *7 (W.D. Va. Jan. 5, 2016) (concluding that the fact that an inmate did not receive a response to the grievances he claimed to have mailed did "not absolve him of the responsibility to pursue his claims" since he "still had options" under OP 866.1, such as requesting receipts for the grievances or "appeal[ing] to the next level after the time to respond expired"); Robertson v. Roberts, No. 7:13-cv-00560, 2014 WL 5801893, at *3

11

(W.D. Va. Nov. 7, 2014), aff'd, 597 F. App'x 211 (4th Cir. 2015) (granting summary judgment on exhaustion under similar circumstances and noting that OP 866.1 "does not relieve [an inmate] of all the responsibilities required of him due to an unexplained discrepancy in the delivery or processing of a grievance form").

In his unsworn "response in further opposition," Nealson argues for the first time that he did not have access to the grievance mailbox "until 16 days after the incident" and therefore could not file a timely written complaint. ECF No. 117 at 7. As noted above, however, the failure to file a written complaint within 15 days of the original incident or the discovery of the incident does not necessarily preclude an inmate from proceeding to file a regular grievance. See OP 866.1 § III(C)(3) ("*Regular Grievances* which include *Written Complaints* filed after the 15 days should be accepted for intake as long as the *Regular Grievance* is submitted within 30 days of the event or discovery."). In any event, because Nealson claims to have filed a regular grievance, he was entitled to appeal to the Regional Ombudsman once the time limit for a grievance receipt or response expired. See id. § IV(B)(3) ("Expiration of a time limit . . . while the grievance is in staff possession qualifies the grievance for an appeal."). There is no evidence that an appeal would have been a "simple dead end" or that anyone used "machination, misrepresentation, or intimidation" to "thwart" Nealson from taking advantage of the appeal process. Ross, 578 U.S. at 644; see also Porter v. Ohai, No. 24-1844, 2025 WL 1292022, at *3 (4th Cir. May 5, 2025) (concluding that an inmate's failure to appeal as permitted by the VDOC policy "mean[t] that his lawsuit must be dismissed" even though "the prison likely threw away seventeen of

12

[his] informal complaints without providing him the receipt he needed to file a formal grievance" and then "perhaps wrongly" rejected a grievance as untimely).

Finally, to the extent Nealson believes that it would have been "futile" to pursue further administrative remedies, ECF No. 117 at 4, there is no futility exception to the PLRA's exhaustion requirement. See Booth v. Churner, 532 U.S. 731, 741 n.6 (2001) (declining to "read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise"). Instead, "exhaustion is required even if the prisoner subjectively believes the remedy is not available; even when the state cannot grant the relief requested; and even where . . . prisoners believe the procedure to be ineffectual or futile." Napier v. Laurel Cnty., 636 F.3d 218, 222 (6th Cir. 2011) (internal quotation marks and citations omitted); see also Reynolds v. Doe, 431 F. App'x 221, 222 (4th Cir. 2011) ("Exhaustion of administrative remedies is mandatory, even where the inmate claims that exhaustion would be futile.").

In sum, there is no evidence from which a reasonable factfinder could conclude that Nealson fully exhausted his administrative remedies or that the appeal process set forth OP 866.1 was unavailable to him through no fault of his own. Accordingly, defendant Keene is entitled to summary judgment on the exhaustion defense.

## IV.    Conclusion

For the reasons stated, Keene's motion for summary judgment, ECF No. 102, is

**GRANTED**.[2] An appropriate order will be entered.

Entered: May 13, 2026

Michael F. Urbanski
U.S. District Judge
2026.05.13 09:44:07
-04'00'

Michael F. Urbanski
Senior United States District Judge

---

[2] Having concluded that Keene is entitled to summary judgment on the exhaustion defense, all other pending motions, including Nealson's motion for summary judgment on the merits of his claim, ECF No. 106, will be denied as moot.

14